## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**ROGER EDWARDS**,

               Plaintiff,

   v.                               **Case No. 15-cv-845-pp**

**DONALD STRAHOTA, TONY MELI,
CAPTAIN TOMAS CORE, ADVOCATE A. MILLER,
N. KAMPHUIS, CAPTAIN ODONOVAN,
CO WEST, DONALD WEBER,
WILLIAM POLLARD, and JOHN DOE, ICE Examiner at WCI,**

               Defendants.

---

### ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED *IN FORMA PAUPERIS* (DKT. NO. 11), SCREENING PLAINTIFF'S COMPLIANT (DKT. NO. 1), AND DISMISSING THE COMPLAINT FOR FAILURE TO STATE A CLAIM

---

The *pro se* plaintiff, Roger Edwards, is a Wisconsin state prisoner. He filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. In this order, the court grants the plaintiff's motion to proceed *in forma pauperis*, screens the plaintiff's complaint, and dismisses it for failure to state a claim.

## I.    MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS*

The Prison Litigation Reform Act applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without pre-paying the civil case-filing fee, as long as he meets certain conditions. One of those conditions is a requirement that the plaintiff pay an

Case 2:15-cv-00845-PP   Filed 02/16/16   Page 1 of 19   Document 18

initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350.00 filing fee over time through deductions from his prisoner account. Id.

On August 25, 2015, the court issued an order requiring the plaintiff to pay an initial partial filing fee of $14.67. Dkt. No. 14. The plaintiff paid that fee on October 29, 2015. Accordingly, the court will grant the plaintiff's motion for leave to proceed without pre-paying the filing fee and allow the plaintiff to pay the balance of the $350.00 filing fee over time from his prisoner account, as described at the end of this order.

## II.     SCREENING OF THE PLAINTIFF'S COMPLAINT

The law allows a court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Denton v. Hernandez, 504 U.S. 25, 31 (1992); Neitzke v. Williams, 490 U.S. 319, 325 (1989); Hutchinson ex rel. Baker v. Spink, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. "Malicious,"

2

although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." <u>Lindell v. McCallum</u>, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To state a cognizable claim under the federal notice pleading system, the plaintiff shall provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The plaintiff need not plead specific facts and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts should follow the principles set forth in <u>Twombly</u> by first, "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Iqbal</u>, 556 U.S. at 679. Legal conclusions must be supported by factual

3

allegations.  Id. If there are well-pleaded factual allegations, the court must, second, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law.  Buchanan-Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980).  The court must give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

A.    Allegations in the Complaint

The plaintiff is incarcerated at Waupun Correctional Institution (WCI). He worked as a clerk in the canteen at WCI. Id. at 5. The plaintiff alleges that the defendants violated his rights under federal and state law when they issued him a conduct report for theft from the canteen, found him guilty of the charge following a disciplinary hearing, and imposed a disposition of twenty days' loss of canteen, loss of employment, and a financial penalty of $16.08 restitution.

Specifically, on July 30, 2013, defendant Officer West issued the plaintiff Conduct Report 2345553, charging him with theft, in violation of Wis. Admin. Code § DOC 303.34. (Dkt. No. 13, Exhibit 1) West issued this report after defendant Donald Weber allegedly overheard a conversation between the

4

plaintiff and another inmate about taking deodorant sticks from the canteen. Before issuing the conduct report, Officer West strip-searched the plaintiff and searched his cell. Staff recovered five deodorants and three tubes of toothpaste from the plaintiff's cell.

On August 1, 2013, defendant Captain Core signed the conduct report to proceed as a major offense. The conduct report states that the "date of incident" was July 29, 2013, and it also includes the following "description of incident":

> On above date and time, I C/O II West worked as the canteen officer. On the 26th of July, Mr. Donald Weber (Canteen Staff) overheard two inmates talking about someone in canteen taking deodorant sticks from canteen. So when I returned from vacation on July 29th, I requested that the cells of the two inmates be searched by SWCH staff. Inmate Keys, Troy #246174 cell was searched and nothing was found. When Inmate Edwards, Rodger #162540 cell was searched by SWCH staff they found 5 extra deodorants and three extra toothpaste. I went back 6 months of canteen slips in Inmate Edwards' name. There is no record of the extra items. Six months of canteen slips and 5 deodorants and 3 toothpaste accompany the report.

(Dkt. No. 13 at 2-3, Exh. 1 to Complaint.)[1]

On August 6, 2013, defendant Captain O'Donovan held a disciplinary hearing on the conduct report. The plaintiff gave a statement at the hearing setting forth five reasons that O'Donovan should find him not guilty of the theft charge. Dkt. No. 1 at 6. First, the plaintiff took issue with the conduct report's "date of incident" as July 29, 2013, while the "description of incident" stated that defendant Weber overheard the conversation on July 26, 2013. According

---

[1] The complaint references multiple exhibits that are not in the record. The only exhibit in the record is Exhibit 1, Adult Conduct Report 2345553, which the plaintiff filed on August 21, 2015. (Dkt. No. 13)

to the plaintiff, it would have been impossible for the alleged theft to have occurred on July 29, 2013, because that day he was at work while his cell was being searched. Id. Second, the plaintiff stated that the conduct report did not state that he or inmate Troy Key took the deodorant, and argued that defendant Weber incorrectly implicated the plaintiff based on extremely vague information.  The plaintiff also questioned defendant Weber's decision to wait three days to report the conversation. Id. Third, the plaintiff stated that no deodorant sticks were ever identified missing following canteen inventory counts. Id. at 6-7. Fourth, he stated that reporting staff should have gone back over more than six months' worth of canteen statements. According to the plaintiff, he could have purchased the items seven months ago, or a year ago, and the defendants' review of canteen statements would not have uncovered that. Id. Finally, the plaintiff argued that no one witnessed him take anything from canteen, nor were any items recovered from him in transit to and from the canteen. Id.

In addition to providing his own statement at the hearing, the plaintiff alleges that his advocate, defendant A. Miller, testified that, "Ms. Kamphuis out of the business office stated that we have not sold Aqua fresh toothpaste since she's been here." Id. at 7. The plaintiff also alleges that inmate Troy Key testified at the hearing, denying that he and the plaintiff discussed taking anything out of the canteen and denying knowledge that the plaintiff had stolen anything from the canteen. Id.

6

According to the plaintiff, defendant Captain O'Donovan found the plaintiff guilty of theft based on the following evidence: the plaintiff's statement, canteen statements, canteen orders, five deodorants, and three toothpastes. Id. at 8. The plaintiff alleges that Captain O'Donovan gave the following reasons for his decision:

> I find the reporting staff credible. The report writer has no vested interest in the outcome of this hearing. The inmate's advocate was present at the hearing and no known conflict of interest was noted.
>
> In looking at inmates statement I will address a few things. The inmate's cell being searched 3 days after the material was missing was irrelevant being the inmate's cell was searched and the material was found. The report states that the officer instituted the search when he came back and when he was made aware of the incident.
>
> The evidence was examined and the inmate was given an opportunity to view it. There was no proof submitted showing that Edwards bought any of these items. It is unclear from all the material where the Aqua Fresh toothpaste came from. After reviewing the report, evidence, and all of the testimony I find that it is more likely than not obtained and retained possession of property that he cannot prove he had permission or consent to possess [sic].

Id. at 8. Captain O'Donovan gave the plaintiff a disposition of twenty days' loss of canteen and $16.08 restitution. Id.

The plaintiff appealed the conduct report disposition and on August 28, 2013, defendant Warden William Pollard affirmed the decision. Id. at 9. The plaintiff also filed an inmate complaint, but defendant John Doe ICE dismissed the grievance. Id.

The plaintiff sues each defendant in his or her individual capacity, as follows: he alleges that Warden Donald Strahota failed to intervene on his

behalf; Security Director Tony Meli failed to intervene; Captain Thomas Core maliciously proceeded on the theft charge without investigating whether all of the evidence supported the charge, and failed to intervene; Advocate A. Miller failed to prove that the plaintiff could not have committed the theft; N. Kamphuis gave a statement which protected the institution instead of protecting the plaintiff from a false conviction, and failed to intervene on the plaintiff's behalf; Captain O'Donovan found the plaintiff guilty of theft with no evidence, and failed to intervene; C.O. West issued the conduct report with no evidence to support the charge, failed to intervene, and failed to conduct a full investigation; Donald Weber gave a false statement about the plaintiff; Warden William Pollard dismissed the plaintiff's offender complaint without investigation, affirmed the decision of the conduct report without investigation, and failed to intervene; and John Doe Institution Complaint Examiner failed to properly investigate the plaintiff's offender complaint. Id. at 10-11.

The plaintiff advances multiple legal theories: defamation (he claims that "a staff member communicated a false statement to another staff member" and "a staff member communicated a false written statement to other staff members"); deliberate indifference (he claims that "all officials involved knew the harm and injustice the petitioner could suffer, from the defamation no one would intervene on his behalf," Id. at 14); retaliation (he claims that the retaliation consisted of his being strip-searched, having his room searched, being written up in a conduct report, being subject to a defective hearing, and being found guilty without evidence); "constitutionally unsound policy" (he

argues that all supervisors should have investigated the facts); common-law negligence (he alleges that all of the defendants were negligent for holding defective investigations); due process (he claims the evidence did not support the charge or conviction); "case-of-one" equal protection (he claims that he was found guilty with no rational basis); and Eighth Amendment mental anguish (he argues that he suffered from many different mental health issues due to what he went through). Id. at 14-17.

The plaintiff seeks compensatory damages, punitive damages, and injunctive relief. He also seeks a preliminary injunction requiring that the conduct report in question--#2345553—"be judged upon for fairness of policy and procedures, and be declared null and void from the petitioner's institutional records or any other records, the Department of Corrections may keep." Dkt. No. 1 at 12.

B.     Discussion

The plaintiff disagrees with the outcome of his conduct report. He challenges the investigation leading up to it, the theft charge that resulted from it, the disciplinary hearing, the affirmance on appeal, and the dismissal of his inmate complaint.

1.     *Deliberate Indifference Claim*

The Eighth Amendment prohibits cruel and unusual punishment. 'The [Eighth] Amendment . . . imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take

reasonable measures to guarantee the safety of the inmates.'" <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994) (citations omitted). In order to prove an Eighth Amendment claim,, the plaintiff must demonstrate that "the deprivation alleged must be, objectively, 'sufficiently serious,'" and that the defendant showed "'deliberate indifference to inmate health or safety.'" <u>Id.</u> at 834 (citations omitted).

The plaintiff makes no allegations that he suffered serious deprivations regarding his health or safety. Nor does he allege that any of the defendants were deliberately indifferent to his health or safety. He alleges that what happened to him was unfair, and that the defendants should have protected him from unfairness. The Eighth Amendment does not provide such protection, and the court will not allow the plaintiff to proceed on Eighth Amendment claims.

      2.   *Retaliation Claim*

"A plaintiff must plea three elements in order to state a claim for retaliation: he must 'specif[y] a retaliatory action': he must name the appropriate defendants: and he must 'assert[] a constitutionally protected activity, the exercise of which caused the . . . retaliatory action.'" <u>Williams v. Snyder</u>, 150 Fed. App'x. 549, 551 (7th Cir. 2005)(quoting <u>Hoskins v. Lenear</u>, 395 F.3d 372, 375 (7th Cir. 2005).

The plaintiff in this case has identified what he claims to be retaliatory actions—the strip search, the search of his cell, the conduct report, etc. He also indicates which defendants took some of these actions. He does not, however,

allege that the retaliatory action was caused by his exercise of any constitutionally-protected right. Indeed, he claims that defendant West searched the plaintiff and his cell, not to punish him for saying something with which West disagreed, but precisely because West overheard the plaintiff talking with someone about taking deodorant sticks from the canteen. In other words, the plaintiff's own allegations support a finding that West conducted the searches because he had reason to believe there would be contraband on the plaintiff or in his cell.

Because the plaintiff has not alleged that his exercise of any constitutional rights motivated the allegedly retaliatory actions, the court will not allow the plaintiff to proceed on a retaliation claim.

3.  *Due Process Claim*

A prisoner challenging the due process he was afforded in a prison disciplinary proceeding must meet two requirements: (1) he must show that he has a liberty or property interest that the state has interfered with; and (2) he must show that the procedures he was afforded upon that deprivation were constitutionally deficient. Scruggs v. Jordan, 485 F.3d 934, 939 (7th Cir. 2007) (citing Rowe v. DeBruyn, 17 F.3d 1049, 1053 (7th Cir. 1994)).

With regard to the first prong of the Scruggs test: the plaintiff received a conduct report disposition of twenty days' loss of canteen and $16.08 restitution. "To claim a property interest protected by the Fourteenth Amendment, a person must have had more than a unilateral expectation of the claimed interest. He must, instead, have a legitimate claim of entitlement to it."

11

Booker-El v. Superintendent, Indiana State Prison, 668 F.3d 896, 900 (7th Cir. 2012)(quoting Kahn v. Bland, 630 F.3d 519, 527 (7th Cir. 2010). In order for such a "legitimate claim" to exist, there must be "existing rules or understandings that stem from an independent source such as state law." Id. (citation omitted). The plaintif does not list anywhere in the complaint any statute or Department of Corrections rule or regulation that gives him a property interest in canteen time. He does not indicate whether the disposition required him to come up with $16.08, or whether it was taken from one of his inmate accounts (in which he might have a property interest) or deducted from his pay (which may or may provide him a property interest). The court cannot tell, therefore, whether the plaintiff had a constitutional property interest in the canteen time and the money.

Even assuming that the plaintiff did have a constitutional property interest in the canteen time and the money, however, the plaintiff's own allegations describe full disciplinary due process. He alleges that he had a disciplinary hearing before O'Donovan, that he was able to have an advocate, that he called a witness, that he presented his own statement, that he received a written explanation of the decision, and that O'Donovan supported the decision with evidence—the sorts of procedures the Supreme Court indicated in Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974) that a prison *should* provide.

The court also notes that it is not clear against whom the plaintiff directs his claim that he did not receive due process. Perhaps this is because, as the court has found, he *did* receive due process. Because the plaintiff's own

Case 2:15-cv-00845-PP   Filed 02/16/16   Page 12 of 19   Document 18

allegations demonstrate that he received due process, the court will not allow the plaintiff to proceed on a due process claim.

### 4. *"Class-of-One" Equal Protection Claim*

To state "a so-called 'class-of-one' equal protection claim, [the plaintiff] must allege that he was 'intentionally treated differently from others similarly situated and that there [was] no rational basis for the difference in treatment.'" Geinosky v. City of Chicago, 675 F.3d 743, 747 (7th Cir. 2012) (citations omitted).

Here, the plaintiff alleges that O'Donovan found him guilty without a rational basis for the conviction. This is not sufficient to state a class-of-one equal protection claim. The plaintiff does not identify any similarly-situated individuals. In addition, he identifies a rational basis for his treatment---he admits that O'Donovan had evidence upon which to convict him (although he argues that it wasn't enough). The plaintiff has not stated sufficient facts to support a class-of-one equal protection claim.

### 5. *Eighth Amendment Mental Anguish Claim*

"A federal civil rights action may not be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental anguish or emotional injury suffered while in custody without a showing of physical injury." Mejia v. McCann, No. 08-C-4534, 2009 WL 636001 at *4 (N.D. Ill. Mar. 3, 2009)(citing 42 U.S.C. §1997e(e)). The plaintiff has alleged no physical injury, and the court does not find that consternation over losing twenty days of canteen and $16.08 results in "mental anguish" that violates the Eighth Amendment.

6.   *Defamation and Slander*

With regard to the plaintiff's claim that the defendants defamed and slandered him: again, the defendant does not state which of the defendants committed defamation or slander. He argues that defendant Weber "gave a false statement on the petitioner." Dkt. No. 1 at 11. He also alleges that defendant West wrote a conduct report that was not supported by evidence. Id. The court will assume that the plaintiff seeks to bring his defamation and slander claims against these two defendants.

"[T]he Constitution does not forbid libel and slander." Smith v. City of Chicago, 992 F. Supp. 1027, 1030 (N.D. Ill. 1998)(quoting Davis v. City of Chicago, 53 F.3d 801, 804 (7th Cir. 1995). "Defamation alone, even by a government entity, does not constitute a deprivation of liberty protected by the Due Process Clause." Id. (quoting Martz v. Inc. Vill. Of Valley Stream, 22 F.3d 26, 31-32 (2d Cir. 1994). Thus, in order for a plaintiff to bring a defamation or slander claim under §1983, the plaintiff must allege that the defendant committed the defamation or slander in support of the violation of some established constitutional right. The court has found above that the plaintiff has failed to allege any violations of recognizable constitutional rights. Thus, the plaintiff has not alleged sufficient facts to state a defamation claim in a §1983 action.

7.   *Negligence*

This leaves only the plaintiff's common-law negligence claim, in which he alleges that under Wisconsin law, the defendants were negligent in holding

defective investigations. This is a federal court; it exercises only supplemental jurisdiction over state-law claims, and it does so only when those claims accompany valid federal claims. See 28 U.S.C. §1367(c). The plaintiff has alleged no valid federal claims; accordingly, the court will not exercise supplemental jurisdiction over this one state-law claim.

8. *Miscellaneous*

There are other reasons that the plaintiff's complaint fails to state a claim

He argues, as to a number of defendants, that they failed to intervene to protect him from the violations he alleges. Describing claims for the violation of "failure to intervene," the Seventh Circuit has said:

> It is true that this court has recognized in the past that "police officers who have a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's right through the use of excessive force but fail to do so" may be held liable. This is what has become known as a "failure to intervene" basis for a constitutional violation under the Eighth Amendment, a principle which this circuit has long recognized. In order for there to be failure to intervene, it logically follows that there must exist an underlying constitutional violation, as we recently articulated in *Fillmore v. Page*, 358 F.3d 496 (7th Cir. 2004).

Harper v. Albert, 400 F.3d 1052, 1064 (7th Cir. 2005)(internal quotes and citations omitted). As the court already has pointed out, the plaintiff has not sufficiently alleged that there were any constitutional violations in which any of the defendants would have been obligated to intervene. The plaintiff has not sufficiently alleged failure to intervene claims.

The plaintiff also alleges that various of the defendants were supervisors, and that they should be held responsible for failing to exercise their supervisory authority to make sure that their subordinates properly

15

investigated his case. Generally speaking, "[t]he doctrine of *respondeat superior* [the Latin term for supervisory liability] cannot be used to hold a supervisor liable for conduct of a subordinate that violates a plaintiff's constitutional rights." Chavez v. Illinois State Police, 251 F.3d 612, 651 (7th Cir. 2001). "That is, 'to be liable for the conduct of subordinates, a supervisor must be personally involved in that conduct.'" Id. (citation omitted). Not only has the plaintiff failed to allege constitutional violations, but he has failed to make allegations that supervisors were personally involved in such allegations. Thus, his supervisory responsibility claims fail.

The plaintiff alleges that he had a constitutional right to a full investigation of the deodorant/toothpaste incident. The Constitution "is a charter of negative liberties; it tells the state to let people alone; it does not require the federal government or the state to provide services, even so elementary a service as maintaining law and order." Slagel v. Shell Oil Refinery, 811 F. Supp. 378, 382 (C.D. Ill. 1993)(quoting Bowers v. DeVito, 686 F.2d 616, 618 (7th Cir. 1982). Thus, there is no constitutional right to have police (or, in this case, prison officials) conduct investigations.

At bottom, as the court said in the beginning, the plaintiff disagrees with the outcome of his disciplinary hearing—he believes there was not sufficient evidence to convict him, while the prison officials came to the contrary conclusion. As the court in Simpson v. Nickel explained, a federal §1983 case is not the proper place for an inmate to challenge the outcome of a prison disciplinary procedure:

It is not within the authority of federal courts to review evidence submitted at prison disciplinary hearings and substitute its opinion for the disciplinary hearing committee's opinion whether the inmate is guilty or innocent of offenses charged in conduct reports. That is a function of state courts. To challenge the outcome of disciplinary hearings, prisoners first must appeal a disciplinary decision to the prison warden under [the Wisconsin DOC Code]. If a prisoner's appeal to the warden is unsuccessful, he may file a writ of certiorari in circuit court, seeking judicial review of the disciplinary decision. In those state court proceedings, evidence can be received and the application of state regulations re-examined. If the substance of the disciplinary action is found to be without merit, the decision can be vacated. A favorable ruling on the substance of the disciplinary report during either the prison appeal or the writ of certiorari would constitute evidence that the substance of the disciplinary report was without merit.

Simpson v. Nickel, No. 05-C-232, 2005 WL 2860251 at *2 (W.D. Wis. Oct. 31, 2005)(citations omitted). Because federal court is not the place for the plaintiff to challenge the outcome of his disciplinary hearing, the court will dismiss the case.

## III. CONCLUSION

The court **GRANTS** the plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 11).

The court **DISMISSES** this case pursuant to 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) for failure to state a claim.

The court **ORDERS** the clerk of court to enter judgment accordingly, and to document that this inmate has brought a case that fails to state a claim under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1).

The court further **ORDERS** that the clerk of court will document that this inmate has incurred a "strike" under 28 U.S.C. §1915(g).

17

The court **ORDERS** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prison trust account the $335.33 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. <u>See</u> Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. <u>See</u> Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. <u>See</u> Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after

18

the entry of the judgment. The court cannot extend this deadline. <u>See</u> Federal Rule of Civil Procedure 6(b)(2).

The court will mail a copy of this order to the Warden of Waupun Correctional Institution.

Dated in Milwaukee, Wisconsin this 16th day of February, 2016.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**